IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ARLONDA S. KEATON,           )
    Plaintiff,                )
                          )
        v.                        )        Civil No. 3:15cv588 (MHL)
                          )
CAROLYN COLVIN,              )
Commissioner of Social Security, )
    Defendant.                )
                          )

## REPORT AND RECOMMENDATION

On May 29, 2012, Arlonda Saunders Keaton ("Plaintiff") applied for Social Security

Disability Benefits ("DIB") and for Supplemental Security Income ("SSI") under the Social

Security Act ("Act"), alleging disability due to hypertension, chronic obstructive pulmonary

disease, left thoracic outlet syndrome, degenerative joint disease of the cervical spine, left ulnar

neuropathy/cubital tunnel syndrome, osteoarthritis of the lumbar spine, mild cardiomyopathy and

minimal coronary artery disease. Plaintiff asserted an alleged onset date of January 10, 2012.

The Social Security Administration ("SSA") denied Plaintiff's claims initially and upon

reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a

written decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's

decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g),

contending that the ALJ erred in evaluating the medical evidence and opinions, Plaintiff's

credibility and Plaintiff's residual functional capacity ("RFC"). (Pl.'s Mem. in Supp. of Mot. for

Summ. J. ("Pl.'s Mem.") (ECF No. 8) at 5.) This matter now comes before the Court for a

Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B),[1] on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[2] For the reasons that follow, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 7) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 9) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On May 29, 2012, Plaintiff filed an application for DIB with an alleged onset date of April 15, 2003. (R. at 107, 213.) Plaintiff then filed an application for SSI on April 23, 2013, asserting the same alleged onset date. (R. at 34). The SSA denied both of these claims on September 14, 2012. (R. at 121.) On September 21, 2012, Plaintiff requested reconsideration. (R. at 132.) The SSA again denied the claims on January 4, 2013. (R. at 133.) On February 27, 2013, Plaintiff requested a hearing before an ALJ. (R. at 142-43.) Then, on April 16, 2014, Plaintiff amended her alleged onset date to January 10, 2012, through counsel. (R. at 228.)

ALJ Stewart Goldstein held an administrative hearing on April 21, 2014. (R. at 49-96.) In a decision dated June 24, 2014, Judge Goldstein denied Plaintiff's claims. (R. at 31-43.) Plaintiff requested a review by the Appeals Council on July 22, 2014. (R. at 28.) On August 7,

---

[1]    The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

[2]    Plaintiff requested oral argument before the Court in her motion for summary judgment. (Pl.'s Mem. at 1.) However, the Court's Revised Standing Order in Social Security Cases, dated October 17, 2013, directs any party requesting oral argument to file a separate motion with an accompanying memorandum. Plaintiff did not comply with that Order. Furthermore, the Court finds that oral argument would not materially aid the Court's analysis of the issues. Therefore, the Court denies Plaintiff's request for oral argument.

2015, the Appeals Council upheld the denial, finding that substantial evidence supported the

ALJ's decision and that no other basis for review existed.  (R. at 1.)  The Appeals Council's

denial made the ALJ's decision the final decision of the Social Security Commissioner.  (R. at

1.)  Plaintiff commenced this civil action on October 2, 2015, seeking judicial review from the

District Court.

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the

Social Security Administration's disability determination 'when an ALJ has applied correct legal

standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v.*

*Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a

preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as

adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig*

*v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  To determine whether substantial evidence exists,

the court must examine the record as a whole, but may not "undertake to re-weigh conflicting

evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]."

*Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).  In

considering the decision of the Commissioner based on the record as a whole, the court must

"take into account whatever in the record fairly detracts from its weight." *Breeden v.*

*Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*,

340 U.S. 474, 488 (1951)).  The Commissioner's findings as to any fact, if substantial evidence

in the record supports the findings, bind the reviewing court to affirm regardless of whether the

court disagrees with such findings. *Hancock*, 667 F.3d at 477.  If substantial evidence in the

3

record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given his RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On April 21, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. (R. at 49-96.) On June 24, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 31-43.)

In analyzing Plaintiff's disability claim, the ALJ followed the five-step evaluation process established by the Social Security Act. (R. at 35-42.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged onset date,

January 10, 2012. (R. at 36.)  At step two, the ALJ found that Plaintiff had the severe

impairments of hypertension, chronic obstructive pulmonary disease, left thoracic outlet

syndrome, degenerative joint disease of the cervical spine with left ulnar neuropathy/cubital

tunnel syndrome, osteoarthritis of the lumbar spine, mild cardiomyopathy and minimal coronary

artery disease. (R. at 36.)  He found her to have "not severe" conditions of sleep apnea and

depression/anxiety. (R. at 37.)  At step three, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 37.)

     In assessing Plaintiff's RFC, the ALJ found that Plaintiff had the RFC to perform light

work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), subject to certain limitations. (R.

at 38.)  Plaintiff could occasionally stoop and climb ramps and stairs. (R. at 38.)  She could no

more than frequently balance, kneel, crouch or crawl. (R. at 38.)  Plaintiff could not climb

ladders, ropes or scaffolds. (R. at 38.)  She could not tolerate concentrated exposure to odors,

dust, fumes, gasses or poor ventilation. (R. at 38.)  Plaintiff could frequently use the left hand

for fingering and feeling. (R. at 38.)

     At step four, the ALJ found Plaintiff could perform past relevant work as a medical

billing clerk, a telephone order clerk and a school secretary. (R. at 42.)  Therefore, Plaintiff did

not qualify as disabled under the Act. (R. at 42.)

## IV.  ANALYSIS

     Plaintiff, sixty-one years old at the time of this Report and Recommendation, previously

worked as a program support specialist, a secretary, a medical billing clerk, a data entry clerk, a

telephone order clerk and a mail carrier. (R. 58-65, 104-05.)  She applied for Social Security

benefits, alleging disability due to hypertension, chronic obstructive pulmonary disease, left

thoracic outlet syndrome, degenerative joint disease of the cervical spine, left ulnar

neuropathy/cubital tunnel syndrome, osteoarthritis of the lumbar spine, mild cardiomyopathy and

minimal coronary artery disease, with an alleged onset date of January 10, 2012. (R. at 36, 208-

14, 228.)  Plaintiff argues that substantial evidence does not support the ALJ's decision. (Pl.'s

Mem. at 5.)  Specifically, Plaintiff contends that the ALJ erred in evaluating the medical

evidence and medical source opinions, in evaluating Plaintiff's treatment compliance and

credibility, and in evaluating Plaintiff's RFC. (Pl.'s Mem. at 5.)  For the reasons set forth below,

the Court finds that substantial evidence supports the ALJ's decision.

> A. Substantial Evidence Supports the ALJ's Evaluation of the Medical Record and
>    Assignment of Weight to Opinion Evidence.

Plaintiff broadly asserts that the ALJ failed to provide sufficient reasons for the weight

afforded to the medical opinions pursuant to 20 CFR § 404.1527(d), 20 CFR § 416.927(d) and

SSR 96-2p. (Pl.'s Mem. at 6-11.)  Defendant responds that the ALJ adequately supported his

assignment of weight using clinical findings. (Def.'s Mem. at 18.)  The Court finds that

substantial evidence supports the ALJ's evaluation of the medical record and assignment of

weight to opinion evidence.

During the sequential analysis, when the ALJ determines whether the claimant has a

medically-determinable severe impairment, or combination of impairments, that would

significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ

must analyze the claimant's provided medical records and any medical evidence resulting from

ordered consultative examinations or medical expert evaluations. 20 C.F.R. §§ 404.1512(a)-(e),

404.1527, 416.912(a)-(e), 416.927.  When the record contains a number of different medical

opinions, including those from Plaintiff's treating sources, consultative examiners or other

sources that are consistent with each other, then the ALJ makes a determination based on that

evidence. 20 C.F.R. §§ 404.1520b(a), 416.920b(a). If, however, the medical opinions conflict

internally with each other or other evidence, then the ALJ must evaluate the opinions and assign

them respective weight to properly analyze the evidence involved. 20 C.F.R. §§ 404.1527(c)(2)-

(6), (e), 416.927(c)(2)-(6), (e).

Under the regulations, the ALJ may only consider an "acceptable medical source" as a

treating source that offers an opinion entitled to controlling weight. SSR 06-03p. Acceptable

medical sources include licensed physicians, licensed or certified psychologists and certain other

specialists, depending on the claimed disability. 20 C.F.R. §§ 404.1527(a), 416.913(a). The

regulations also provide for the consideration of opinions from "other sources," including nurse-

practitioners, physician's assistants or therapists. 20 C.F.R. §§ 404.1513(d), 416.913(d).[3]

Under the applicable regulations and case law, a treating source's opinion deserves controlling

weight if it enjoys support from medically acceptable clinical and laboratory diagnostic

techniques and comports with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20

C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p. Further, the regulations do not require that

the ALJ accept opinions from a treating source in every situation, *e.g.*, when the source opines on

the issue of whether the claimant is disabled for purposes of employment (an issue reserved for

the Commissioner), or when the treating source's opinion conflicts with other evidence or when

it otherwise lacks support. 20 C.F.R. §§ 404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4), (d).

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical

opinion absent some indication that the ALJ "dredged up specious inconsistencies." *Dunn v.

Colvin*, 607 Fed.Appx. 264, 267 (4th Cir. 2015) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077

---

[3]     The regulations detail that "other sources" include medical sources that are not
considered "acceptable medical sources" under 20 C.F.R. §§ 404.1513(a) and 416.913(a). The
given examples are a non-exhaustive list.

(7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should remain untouched unless the ALJ failed to give a sufficient reason for the weight afforded. 20 C.F.R. § 404.1527(d).

The ALJ must consider the following when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, those same regulations specifically vest the ALJ — not the treating source — with the authority to determine whether a claimant qualifies as disabled as the Act defines that term. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Although the regulations explicitly apply these enumerated factors only to treating sources, the ALJ may apply those same factors in evaluating opinion evidence from "other sources." SSR 06-03p.

1. Plaintiff's Orthopedic Treatment for Her Left Arm.

At the outset, the Court notes the strain required to follow Plaintiff's argument. Plaintiff states that she disputes the ALJ's assignment of weight to Plaintiff's treating physicians, (Pl.'s Mem. at 6 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-2p)); however, Plaintiff actually argues that the ALJ either "cherry-pick[ed]," "mischaracterized" or failed to discuss relevant medical evidence regarding the treatment of her left hand. (Pl.'s Mem. at 7.) Contrary to Plaintiff's arguments regarding the ALJ's alleged failure to consider all of Plaintiff's orthopedic medical evidence, and as Defendant correctly notes, the ALJ did in fact reference and discuss the medical records covering Plaintiff's treatment with a number of orthopedists, including Dr. Frankenhoff and Dr. Thompson. (R. at 40.) The ALJ specifically discussed

8

Plaintiff's left hand numbness and sensitivity, her left ulnar neuropathy, her related physical

therapy and, ultimately, her left cubital release surgery and its aftermath. (R. at 40.)

Plaintiff argues that the ALJ mischaracterized this evidence or otherwise ignored

evidence of problems with Plaintiff's left hand. (Pl.'s Mem. at 7-11.)  However, both the record

and the ALJ's opinion reflect that he did not ignore the problems with Plaintiff's left hand.  For

example, Plaintiff objects to the ALJ's language regarding the aftermath of Plaintiff's left cubital

release surgery. (Pl.'s Mem. at 8.)  In full, the ALJ states:

> She first underwent physical therapy in late 2012 and then a left
> cubital release in July 2013 (Exhibits 14F/18F/20F/24F).  Such
> measures appear to have helped her symptoms, as demonstrated by
> physical examination findings to include normal range of spinal,
> left elbow, and left wrist motion, full left-hand strength with thumb
> apposition, and good flexion in relation to the left-hand fingers,
> despite some decreased sensation and reduced strength in the left
> fourth and fifth digits (Exhibits 19F-20F/25F/27F).

(R. at 40.)  Furthermore, the ALJ referenced reports of "continued . . . left hand numbness" after

the surgery. (R. at 40.)  The Court fails to discern any mischaracterization in the ALJ's treatment

of the record, and substantial evidence supports the ALJ's characterization of the record.

The record demonstrates that Plaintiff had a history of problems with her left arm. (R. at

773-74.)  Moreover, the record also shows that, before Plaintiff's left cubital release surgery,

both Plaintiff and her doctors were aware of "the chance that [her left arm] symptoms would not

get better after the cubital tunnel release." (R. at 941.)  Indeed, following the surgery, Plaintiff

still had some numbness in the tip of her left small finger (R. at 937), decreased sensation and

strength in her fourth and fifth left digits (R. at 940), and "chronic . . . dysesthesia" in her left

hand. (R. at 941.)

However, following the surgery, Plaintiff's left small finger exhibited numbness

"primarily at the tip of her finger," perhaps showing some improvement. (R. at 937.)

9

Additionally, a post-surgery examination of Plaintiff's "left hand reveal[ed] 5/5 motor function in the AIN, PIN and ulnar distributions." (R. at 941.) Plaintiff also had full range of motion in her elbow and shoulder and could "fully straighten and bend her elbow, wrist and hand." (R. at 937, 941.) Moreover, Plaintiff denied any weakness or new symptoms following the surgery. (R. at 940.) The record, therefore, indicates a mixed bag of some continuing symptoms (as expected prior to the surgery) and some improvement. Therefore, the ALJ's characterization of Plaintiff's orthopedic treatment, including an explicit recognition of Plaintiff's continued deficits in sensation and strength in her fourth and fifth left digits, finds support in the record.

Plaintiff further argues that the ALJ should have explicitly afforded weight to Plaintiff's treating orthopedists, including Dr. Thompson and Dr. Malasitt. (Pl.'s Mem. at 11.) An ALJ must assign weight to every medical opinion in a claimant's record. 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). Determining the specific weight of medical opinions carries importance, because the regulations further require a comparative analysis of competing medical opinions. *See, e.g.*, 20 C.F.R. § 404.1527(c)(1) ("Generally, [the Commissioner] give[s] more weight to the opinion of a source who examined [plaintiff] than to the opinion of a source who has not examined [plaintiff].") Requiring an ALJ to assign specific weight to medical opinions is necessary, because a reviewing court "faces a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence." *Arnold v. Sec'y of Health Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977).

Unless the Commissioner "has sufficiently explained the weight [s]he has given to obviously probative exhibits, to say that h[er] decision is supported by substantial evidence

10

approaches an abdication of the court's duty to scrutinize the record as a whole to determine

whether the conclusions reached are rational." *Id.* (quoting *Oppenheim v. Finch*, 495 F.2d 396,

397 (4th Cir. 1974)) (internal quotation markers omitted).  The ALJ must assign weight with

such specificity "to make clear to any subsequent reviewers the weight the adjudicator gave to

the . . . source's medical opinion and the reasons for that weight."  SSR 96-2p (discussing

affording weight to treating physicians).  Accordingly, a reviewing court cannot determine if

substantial evidence supports an ALJ's findings "unless the [ALJ] explicitly indicates the weight

given to all the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984)

(citing *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980); *Strawls v. Califano*, 596 F.2d 1209,

1213 (4th Cir. 1979); *Arnold*, 567 F.2d at 259)); *Vaughan v. Colvin*, 2014 WL 4700256, at *18

(E.D. Va Sept. 18, 2014) (finding error where the ALJ failed to assign specific weight to the state

agency physician's opinion, instead only stating that he had assigned it "appropriate weight.").

Here, the ALJ did not assign specific weight to the opinions of Dr. Thompson and Dr.

Malasitt.  Accordingly, the ALJ erred. *See Stawls*, 596 F.2d at 1213 (finding error where ALJ

failed to indicate weight afforded to certain medical opinion).  However, the Court will next

examine whether any harm resulted from that error. [4]

---

[4]      Although the Fourth Circuit has yet to address the application of the harmless error rule
to Social Security Disability cases in a published opinion, it has applied the harmless error
doctrine when reviewing Social Security appeals in two unpublished opinions. *See Tanner v.
Comm'r of Soc. Sec.*, 602 F. App'x 95, 101 (4th Cir. 2015) (unpublished) (finding failure to
explicitly assign weight to treating physician to constitute harmless error); *Garner v. Astrue*, 436
F. App'x 224, 225 (4th Cir. 2011) (unpublished) (finding drafting error to constitute harmless
error); *Morgan v. Barnhart*, 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished) (finding error
by the ALJ regarding time restrictions for sitting and standing to be harmless).  Consequently,
the Court has previously held that the harmless error rule applies to Social Security Disability
appeals. *James v. Colvin*, 2014 WL 4630598, at *15 (E.D. Va. Sept. 11, 2014).

The burden of establishing a harmful error rests on the "the party attacking the agency's determination." *Shineski v. Sanders*, 556 U.S. 396, 409 (2009). As the Court in *Sanders* elaborated:

> To say the that the claimant has the "burden" of showing that an error was harmful is not to impose a complex system of "burden shifting" rules or a particularly onerous requirement . . . Often the circumstances of the case will make clear to the appellate judge that the ruling, if erroneous, was harmful and nothing further need be said. But, if not, then the party seeking reversal normally must explain why the erroneous ruling caused harm.

*Id.* at 410. Thus, when reviewing a decision for harmless error, a court, among other things, must look at:

> An estimation of the likelihood that the result would have been different, an awareness of what body . . . has the authority to reach the result, a consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings, and a hesitancy to generalize too broadly about particular kinds of errors when the specific factual circumstances in which the error arises may well make all the difference.

*Id.* at 411-12. And "where the circumstances of the case show a likelihood of prejudice, remand is appropriate so that the agency can decide whether consideration is necessary." *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2010). Against this standard, the Court concludes that the ALJ's error amounted to a harmless error for the reasons that follow.

First, as discussed above, the Court notes that the ALJ in fact discussed Plaintiff's orthopedic treatment in his opinion and, in so doing, cited to the records of Plaintiff's treating orthopedists. (R. at 40.) Furthermore, while the ALJ did not explicitly address Dr. Thompson's and Dr. Malasitt's statements that there was a "chance that [Plaintiff's left arm] symptoms would not get better after the cubital tunnel release," (R. at 941), and that "[Plaintiff's left ulnar nerve diathesis [is] likely not going to get any better," (R. at 967), the ALJ clearly considered those statements in assessing Plaintiff's RFC. (R. at 40.) The ALJ noted the left hand numbness found

12

in Dr. Thompson's records. (R. at 40, 941.) Also, the ALJ noted the cervical/thoracic tenderness and limited range of motion found in Dr. Malasitt's notes. (R. at 40, 967.)

Additionally, the error did not harm Plaintiff, because the ALJ in fact found that Plaintiff's "degenerative joint disease of the cervical spine with left ulnar neuropathy/cubital tunnel syndrome" constituted a severe impairment. (R. at 36.) Moreover, the ALJ specifically included functional limitations in Plaintiff's RFC that clearly derived from the problems with Plaintiff's left arm by limiting Plaintiff to work requiring only "frequent use of the left hand for fingering and feeling." (R. at 38.) Indeed, the ALJ specifically cited to the notes containing the aforementioned prognoses — Dr. Thompson's late October 2013 note, (R. at 40, 941-42) and to Dr. Malasitt's late 2013 note. (R. at 40, 967). Furthermore, the ALJ actually discounted the state agency consultant's opinions as to Plaintiff's RFC given that they failed to fully consider Plaintiff's limitations due to her left arm limitations. (R. at 41.)

Given that the ALJ actually considered the relevant orthopedic evidence and integrated Plaintiff's orthopedic limitations into his RFC determination, the Court finds it highly unlikely that assigning specific weight would have altered the ALJ's ultimate conclusion. And, the ALJ's error does not impede the Court's ability to conduct a meaningful review of the decision. Plaintiff can point to no harm created by the ALJ's failure to assign specific weight. The Court, therefore, finds that any error that the ALJ may have committed by failing to explicitly assign a weight to the statements of Dr. Thompson and Dr. Malasitt constituted a harmless error. *See Tanner*, 602 F. App'x at 101 ("[R]eversing the ALJ's decision solely because he failed to assign weight to [the treating physician's opinion] would be pointless. As noted above, the RFC assessment and [the treating physician's opinion] are largely consistent.")

13

2. The ALJ Properly Evaluated Dr. Campbell's Opinion.

Plaintiff asserts that the ALJ's failure to give significant weight to the opinion of

Plaintiff's treating physician, Dr. Campbell, constitutes clear and reversible error. (Pl.'s Mem. at

11-14.) Plaintiff argues that the ALJ should have considered Dr. Campbell's opinion despite its

age, and that the ALJ failed to acknowledge the functional limitations included in Dr.

Campbell's opinion. (Pl.'s Mem. at 12-13.) Defendant argues that substantial evidence supports

the ALJ's assignment of weight. (Def.'s Mem. at 20-23.)

Dr. Campbell completed an insurance statement on April 27, 2004, addressing some of

Plaintiff's impairments. (R. at 288.) Dr. Campbell noted that Plaintiff could not withstand

swimming, lifting, reaching, or prolonged sitting, standing or typing. (R. at 288.) He reported

that Plaintiff could not perform a simple grasp or power grip with her left hand. (R. at 289.)

Plaintiff could use her left hand at five percent for fine manipulation. (R. at 289.) Plaintiff could

not excessively use her arm or wrist — the report does not specify which arm or wrist. (R. at

288.) Dr. Campbell vaguely documented Plaintiff's symptoms as "unbalanced equilibrium, back

spasms, numbness." (R. at 42, 288.) The ALJ gave little weight to Dr. Campbell's opinion,

citing the eight-year gap between the opinion and the alleged onset date and Dr. Campbell's use

of "vague terminology." (R. at 41-42.)

Generally, a reviewing court should not disturb an ALJ's decision "absent some

indication that the ALJ has 'dredged up specious inconsistencies,' or has failed to give a

sufficient reason for the weight afforded a particular opinion." *Dunn*, 607 F. App'x at 267

(citing *Scivally*, 966 F.2d at 1077). Here, the evidence does not show a "specious

inconsistency," and the ALJ properly stated his reason for assigning Dr. Campbell's opinion only

14

little weight. Substantial evidence supports the ALJ's assignment of little weight to Dr. Campbell's opinion.

As an initial matter, the Court notes that Dr. Campbell's opinion is dated April 27, 2004 — approximately eight years before Plaintiff's alleged onset date. (R. at 288.) Furthermore, Dr. Campbell's opinion lists vague symptoms as well as some non-specific limitations, such as no "excessive" use of an undefined arm or wrist and no "prolonged" sitting, standing or swimming. (R. at 42.) Moreover, while Dr. Campbell's opinion lists some objective findings, (R. at 42), the supporting medical records weigh against Dr. Campbell's ultimate conclusion regarding Plaintiff's RFC limitations. The objective records show that Plaintiff had "fairly reasonable posture," (R. at 306); no indication of fractures or dislocations in her knees, (R. at 293-94); normal signal within her spinal cord, albeit with minimal posterior bulging, (R. at 295); mild restriction in the range of motion of her spine, (R. at 306); painless flexion and extension, (R. at 306); symmetrical deep tendon reflex at 1/4 , (R. at 306); and, full motor power in her shoulder, elbow and hand muscles, (R. at 306). Furthermore, while an x-ray of Plaintiff's spine indicated spurring and narrowing of spaces, it also revealed "no fracture, dislocation or dysesthesias." (R. at 306.) Progress notes also show that Plaintiff's cardiovascular system was "regular" and "normal" on a number of occasions. (R. at 313, 315, 318.) Finally, despite Plaintiff's subjective complaints of dizziness and lack of balance, "gait and balance testing suggested that [Plaintiff] was not making maximum effort to stabilize herself." (R. at 305.)

Given the objective findings in the medical record and their apparent inconsistency with Dr. Campbell's vague listing of symptoms and conclusion regarding Plaintiff's RFC, the Court cannot hold that the ALJ erred in assigning Dr. Campbell's opinion little weight. *See Craig*, 76 F.3d at 590 ("By negative implication, if a physician's opinion is not supported by clinical

evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."); *cf.* 20 C.F.R. § 404.1527(c)(3) (stating that the Commissioner will give more weight to a treating physician's opinion if it is supported by medical signs and laboratory findings). Rather, the Court finds that substantial evidence supports the ALJ's determination.[5]

3. The ALJ Properly Evaluated Dr. Bryan's Opinion.

Plaintiff argues that the ALJ erred in discounting Dr. Bryan's opinion that Plaintiff could not work. (Pl.'s Mem. at 13-15.) Defendant argues that substantial evidence supports the ALJ's assignment of little weight to Dr. Bryan's opinion. (Def.'s Mem. at 22-23.)

On November 21, 2012,[6] Dr. Bryan drafted a note ("November 21 Note") stating that Plaintiff should "remain out of work," until Dr. Bryan could assess Plaintiff's status and the "chronicity" of her problem after physical therapy. (R. at 622.) Dr. Bryan wrote the November 21 Note apparently as a follow up to an October 3, 2012 note, in which Dr. Bryan stated "[a]t this time [Plaintiff] cannot work." (R. at 667.) The November 21 Note included no objective medical information, and the October 3 note merely indicated that Plaintiff had "unspecified inflammatory and toxic neuropathies." (R. at 622, 667.) In specifically addressing the

---

[5]     Plaintiff does not argue that the ALJ erred in his assignment of little weight to Dr. Simon's opinion. (*See* Pl.'s Mem. at 6-15.) To the extent that Plaintiff could be challenging Dr. Simon's opinion, dated October 28, 2004, the Court finds that the ALJ did not err in assigning Dr. Simon's opinion little weight, for largely the same reasons the ALJ did not err in assigning Dr. Campbell's opinion little weight. Moreover, the Court notes that Dr. Simon's opinion itself appears to be devoid of any objective medical records from which the ALJ could conclude that Dr. Simon's opinion was entitled to more weight. (*See* R. at 488-91.)

[6]     The ALJ opinion lists the date of the note as January 17, 2013. (R. at 42.) The record reveals Dr. Bryan wrote the note on November 21, 2012, and VCU Health System's medical records department released the note on January 17, 2013. (R. at 42.)

November 21 Note, the ALJ assigned little weight to Dr. Bryan's opinion because she failed to assess any specific functional limitations. (R. at 42.)

Statements from treating physicians opining that a plaintiff is "unable to work" or is "disabled" are not entitled to any special weight. *Morgan v. Barnhart*, 142 F. App's 716, 722 (4th Cir. 2005) (unpublished) (citing 20 C.F.R. § 404.1527(e)(1)). Rather, such statements are legal conclusions reserved to the Commissioner. *See id.*; 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). The Court finds no error in the ALJ's decision. Because the ALJ specifically discounted only Dr. Bryan's statement that Plaintiff could not work, a determination that only the Commissioner can make, the Court finds that the ALJ did not err in assigning Dr. Bryan's November 21 Note little weight.

While Plaintiff points to records from Dr. Bryan on other treatment dates, (Pl.'s Mem. at 14-15), the ALJ only specifically discredited the November 21 Note (R. at 42). Indeed, in citing to the records of Plaintiff's treatment with the VCU Health System, and ultimately including Plaintiff's orthopedic limitations in his RFC assessment, the ALJ clearly considered Plaintiff's course of treatment with Dr. Bryan. (R. at 38-41, 610, 629, 662.) Moreover, as Plaintiff admits, Dr. Bryan never submitted an opinion as to Plaintiff's functional limitations. (Pl.'s Mem. at 14-15.) Rather, Dr. Bryan merely offered the opinion that Plaintiff should "remain out of work" until the completion of her physical therapy, and it was this opinion that the ALJ discounted. (R. at 42.)

B.  Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Credibility.

Plaintiff contends that the ALJ improperly discredited Plaintiff's credibility. (Pl.'s Mem. at 15.) Specifically, Plaintiff challenges the ALJ's interpretation of Plaintiff's medication

17

compliance, overall course of treatment, objective findings, statements of record and reported activities. (Pl.'s Mem. at 15-26.) Defendant maintains that substantial evidence supports the ALJ's credibility findings. (Def.'s Mem. at 23.) The Court finds that the record as a whole substantially supports the ALJ's assessment of Plaintiff's credibility.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that have a basis in the claimant's credible complaints. SSR 16-3p at 2. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d 585, 594 (4th Cir. 1996); SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step requires the ALJ to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Id.*; SSR 96-7p at 5. The ALJ must consider all the medical evidence in the record. *Craig*, 76 F.3d at 594-95; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms

18

and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d 595-96; SSR 96-7p at 5-6, 11.[7]

This Court must give great deference to the ALJ's credibility determinations. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, the caselaw firmly establishes that Plaintiff's subjective allegations of pain do not, alone, prove that Plaintiff qualifies as disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements regarding

---

[7]     On March 16, 2016, the Agency issued SSR 16-3p, which rescinded and superseded SSR 96-7p, eliminating the credibility finding at issue here. The ALJ issued his opinion on June 24, 2014, before SSR 16-3p took effect on March 16, 2016. The Agency does not have the power to engage in retroactive rulemaking. *Compare Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to promulgate retroactive rules due to its disfavored place in the law), *with* 42 U.S.C. § 405(a) (granting the Agency the general power to make rules, but not granting the Agency retroactive rulemaking power). Because the SSR does not have retroactive effect, the Court will review the ALJ's decision under SSR 96-7p.

the intensity, persistence and limiting effects of her impairments were not credible for the

reasons detailed in the opinion. (R. at 38-42.) Specifically, the ALJ considered Plaintiff's non-

compliance with treatment recommendations, the conservative nature of Plaintiff's treatment,

objective findings in the medical record, Plaintiff's own testimony and Plaintiff's reported

activities of daily living. (R. at 41.) Having reviewed the record and the ALJ's decision, the

Court finds that substantial evidence in the record supports the ALJ's assessment of Plaintiff's

credibility.

1.  Plaintiff's Non-Compliance With Medical Treatment

Plaintiff asserts that, pursuant to SSR 82-59 and 20 C.F.R § 404.1530, the ALJ

erroneously found that Plaintiff was noncompliant with her medical treatment. (Pl.'s Mem. at

15-20.) On the contrary, Plaintiff argues that she in fact complied with her medical treatment

and with her use of prescription medication. (Pl.'s Mem. at 15-17.) Plaintiff argues that the ALJ

erred by failing to consider Plaintiff's confusion about her medication during the hearing. (Pl.'s

Mem. at 15-16.) Additionally, Plaintiff argues that the ALJ improperly invoked SSR 96-7p by

using an erroneous finding of noncompliance to discredit Plaintiff's allegations of pain. (Pl.'s

Mem. at 15-20.) Defendant responds that the ALJ properly characterized Plaintiff's testimony,

and that the record contains additional evidence of non-compliance undermining Plaintiff's

credibility. (Def.'s Mem. at 26.)

Noncompliance with a treatment regimen can indicate a claimant's lack of credibility as

to the severity of the alleged symptoms. *Dunn*, 2015 WL 3451568, at *28-29. Once an ALJ has

found an applicant non-compliant with treatment, the ALJ may deem the applicant's statements

about pain or symptoms "less credible." SSR 96-7p. Agency policy required that the ALJ first

consider any explanations from the applicant, or any other evidence in the record, that may

20

explain the applicant's failure to comply before drawing any reasonable inferences from the lack of treatment.  SSR 96-7p.

The ALJ found Plaintiff noncompliant with treatment, indicating that Plaintiff took her medications based on her symptoms rather than as prescribed.  (R. at 41.)  He also stated that without adequate justification, Plaintiff took the medications for the wrong conditions.  (R. at 41.)  The ALJ then found Plaintiff's testimony about her use of pain medication and, by extension, her allegations of pain, functional limitations and physical symptoms, not credible.  (R. at 41.)  Additionally, the ALJ noted that Plaintiff's failure to discontinue smoking, as medically recommended, weighed against her credibility.  (R. at 39-40.)

Substantial evidence supports the ALJ's finding of non-compliance and discounting of Plaintiff's credibility.  The medical records demonstrate that Plaintiff was likely not properly taking her blood pressure medicine.  Plaintiff visited the hospital for chest pain and anxiety on April 30, 2013.  (R. at 881.)  The attending physician noted that Plaintiff had full medicine bottles despite not refilling her prescriptions for six months.  (R. at 881.)  The physician documented Plaintiff's uncontrolled hypertension, and doubted that Plaintiff complied with her home blood pressure medications.  (R. at 882, 887.)  After visiting the hospital for an allergic reaction, a physician instructed Plaintiff to stay to treat her elevated blood pressure.  (R. at 944-45.)  Plaintiff left the hospital against medical advice.  (R. at 944.)

Furthermore, on December 19, 2011, Dr. Bryan counseled Plaintiff on the dangers of smoking and explained chronic obstructive pulmonary disease.  (R. at 426.)  On January 4, 2012, Dr. Bryan recorded that Plaintiff had decreased her cigarette smoking.  (R. at 414.)  During that visit, Dr. Bryan noted that Plaintiff's hypertension had improved.  (R. at 414.)  Plaintiff advised Dr. Bryan that she would quit smoking.  (R. at 417.)  On March 5, 2012, Plaintiff told Dr. Bryan

21

that she had not smoked since her last visit. (R. at 392.) But on April 4, 2012, Plaintiff's blood

pressure read high, and Plaintiff reported that she had replaced tobacco with an electric cigarette,

possibly one with nicotine. (R. at 440.) Then on May 21, 2012, during a cardiology

appointment, Plaintiff reported that she still smoked. (R. at 864.) Likewise, on May 22, 2012,

Dr. Bryan suggested that Plaintiff contact a smoking cessation program, because she had started

smoking again. (R. at 402, 405.)

Further supporting the ALJ's finding of Plaintiff's non-compliance with treatments, Dr.

Bryan noted that she could not assess Plaintiff's ability to work until Plaintiff completed physical

therapy. (R. at 502.) Plaintiff did not perform her home exercise program as instructed. (R. at

516-17.) After three appointments, the physical therapist discharged Plaintiff from treatment due

to non-attendance. (R. at 556.) Plaintiff later attributed her absences to transportation

difficulties. (R. at 629.) Later, Dr. Thompson recommended physical therapy for Plaintiff's

neck and back, stating, "I really do feel that physical therapy is going to help her a lot." (R. at

941-42.) Plaintiff again did not attend physical therapy due to transportation issues. (R. at 967.)

Dr. Malasitt gave Plaintiff another physical therapy referral, remarking, ". . . it is probably the

most important thing for her at this time." (R. at 967.) The record contains no evidence that

Plaintiff attended therapy as prescribed by Dr. Malasitt, and does not provide a reason for

Plaintiff's absence.

Based on the extensive and substantial evidence discussed above, the Court finds that the

ALJ did not err by discounting Plaintiff's credibility due to non-compliance with prescribed

medical treatment. The record shows that Plaintiff failed to take her prescription medication in

the manner set forth by Plaintiff's treating physician, failed to follow her doctors' advice to quit

smoking and failed to perform her prescribed physical therapy. In short, substantial evidence

supports the ALJ's determination that Plaintiff did not comply with her prescribed medical treatment.

Before proceeding to additional evidence that supports the ALJ's ultimate credibility finding, the Court notes that Plaintiff specifically argues against the ALJ's finding of non-compliance. First, Plaintiff argues that she was confused about her pain medications. (Pl.'s Mem. at 16.) Second, Plaintiff argues that the ALJ did not follow the proper regulatory procedures for discounting her credibility on the basis of non-compliance. (Pl.'s Mem. at 18-19.) Regarding Plaintiff's possible confusion over her pain medicine, the Court notes that the record does not appear to contain a prescription for Tramadol, a prescription that Plaintiff testified she took for her left arm pain and neuropathy. (R. at 67, 69.) Therefore, the Court assumes, without finding, that Plaintiff did experience some confusion either regarding her prescriptions in general or the ALJ's line of questioning at the administrative hearing. Due to the lack of objective medical evidence regarding Tramadol, the Court has not considered Plaintiff's purported pain medication non-compliance in determining that substantial evidence supports the ALJ's credibility finding.

However, the Court finds that, even without considering Plaintiff's purported non-compliance with her prescription pain medication regimen, substantial evidence still exists to support the ALJ's general finding of Plaintiff's medical treatment non-compliance. Substantial evidence of record shows that Plaintiff failed to take her blood pressure medication as prescribed, (R. at 881-82, 887), failed to quit smoking as recommended, (R. at 402, 405, 414, 426, 440, 864), and failed to participate in physical therapy—a treatment that Plaintiffs orthopedist stated was "probably the most important thing for her." (R. at 967). In short, substantial evidence supports the ALJ's finding of non-compliance.

Regarding Plaintiff's contention that the ALJ did not follow the proper regulatory procedures for discounting her credibility on the basis of non-compliance, Plaintiff herself admits that the ALJ did not find her non-credible based solely and directly on evidence of prescription medicine non-compliance. (Pl.'s Mem. at 19.)  Rather, Plaintiff correctly recognizes that the ALJ merely used Plaintiff's non-compliance "as a vehicle to undermine [Plaintiff's] credibility." (Pl.'s Mem. at 19.)  The ALJ was fully entitled to consider Plaintiff's treatment and purported non-compliance with her treatment in making his credibility determination.  As the Fourth Circuit has held the ALJ's evaluation must take into account *"all the available evidence,"* in assessing a claimant's credibility. *Craig,* 76 F.3d 595-96 (emphasis added); SSR 96-7p, at 5-6, 11.  Therefore, the ALJ did not err by considering Plaintiff's non-compliance when making his credibility determination.[8]

2. Plaintiff's Conservative Course of Treatment

Plaintiff argues that, because she pursued all treatment available for her left hand ulnar neuropathy, the ALJ erred in characterizing Plaintiff's treatment as "conservative." (Pl.'s Mem. at 21-22.)  Plaintiff also contends that the ALJ should not have factored conservative treatment into his determination of Plaintiff's credibility. (Pl.'s Mem. at 21-22.)  Defendant argues that

---

[8]      Plaintiff argues that the ALJ did not follow the proper procedures prescribed in SSR 82-59 and 20 C.F.R. § 404.1530 in finding that Plaintiff did not comply with her medical treatment. Plaintiff's argument is misplaced. SSR 82-59 and 20 C.F.R. 404.1530 only apply where an ALJ uses a claimant's non-compliance as the direct basis for an ultimate finding that the claimant is not disabled. *See Copper v. Astrue,* No. 08-2621, 2010 WL 3294691, at *3 (D. Md. Aug 19, 2010) (explaining that SSR 82-59 only applies where an ALJ finds a claimant who would otherwise be disabled under the regulations not to be entitled to benefits due to the fact that the claimant failed to follow the prescribed treatment regimen). Here, as Plaintiff admits, the ALJ did not find Plaintiff to be disabled, but denied her benefits merely because of her non-compliance, (*see* Pl.'s Mem. at 19); therefore, SSR 82-59 and 20 C.F.R. § 404.1530 do not apply in this case.

caselaw permits the ALJ to consider conservative treatment in a credibility analysis. (Def.'s Mem. at 27.)

An ALJ may appropriately consider medication and treatment used to alleviate a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). If the claimant requires only conservative treatment, an ALJ can reasonably hold that the alleged disability lacks the seriousness that the claimant alleges. *Dunn*, 2015 WL 3451568, at *25. Again, the court should defer to an ALJ's reasonable evaluations of credibility. *Eldeco*, 132 F.3d at 1011.

In this case, the ALJ found that Plaintiff's course of "generally conservative medical treatment" undermined Plaintiff's credibility regarding her symptoms and functional limitations. (R. at 40.) The ALJ supported this finding by noting that beyond a cardiac catheterization and left cubital release, Plaintiff's treatment consisted of medication and physical therapy. (R. at 40.)

The record as a whole supports the ALJ's characterization of Plaintiff's treatment as "generally conservative." Doctors treated Plaintiff's cervical and lumbar spine conditions with physical therapy and medicine. (R. at 502, 683-97, 786, 934-36, 940-41, 967.) No doctor recommended neck or back surgery, even after radiological testing. (R. at 502, 683-97, 786, 934-36, 940-41, 967.) Treatment for Plaintiff's cardiovascular and respiratory issues consisted of cardiac catheterization, medicine and lifestyle changes. (R. at 344-65, 392-483, 858-77). Therefore, substantial evidence supports the ALJ's characterization of Plaintiff's treatment as conservative. The ALJ did not err by including this finding as part of Plaintiff's credibility analysis. 20 C.F.R. § 404.1529(c)(3)(iv)-(v); *Dunn*, 2015 WL 3451568, at *25.

3. Objective Findings in the Medical Record

Plaintiff asserts that the ALJ omitted positive findings supportive of Plaintiff's allegations of pain and functional limitations, including the results of the nerve conduction study,

in relation to Plaintiff's credibility. (Pl.'s Mem. at 22.) Defendant argues that the ALJ's references to the clinical evidence support the credibility finding. (Def.'s Mem. at 24.)

The ALJ found that a "lack of positive objective findings" undermined Plaintiff's testimony. (R. at 40.) He noted that radiological and laboratory testing corroborated Plaintiff's impairments. (R. at 40.) The ALJ also noted that Plaintiff's examination findings included no extremity edema, clear lungs, normal respirations and breath sounds, regular cardiac rate and rhythm, normal spinal, left elbow and left wrist motion, full left-hand strength with thumb apposition and good left-hand finger flexion. (R. at 40.)

Substantial evidence supports the ALJ's assessment of the objective findings. Contrary to Plaintiff's argument, the ALJ actually acknowledged that some of Plaintiff's tests yielded abnormal results. (R. at 40.) However, the record as a whole includes several tests with normal results. Accordingly, the Court defers to the ALJ's assessment of Plaintiff's credibility based on a review of negative and positive test results.

4.  Plaintiff's Inconsistent Statements.

Plaintiff challenges the ALJ's description of Plaintiff's statements about her medication compliance and her ability to type as inconsistent. (Pl.'s Mem. at 23.) Defendant argues that the medical records and Plaintiff's testimony proved inconsistent. (Def.'s Mem. at 24, 27-28.)

The ALJ held that inconsistencies in Plaintiff's testimony undermined Plaintiff's credibility. (R. at 41.) The ALJ specifically pointed to Plaintiff's non-compliance with medication. (R. at 41.) He also stated that while Plaintiff alleged to have a limitation on typing, she attended college during the relevant period. (R. at 41.) Lastly, the ALJ stated the record did not corroborate Plaintiff's complaints of medication side effects. (R. at 41.)

The record supports the ALJ's evaluation of Plaintiff's statements as inconsistent. On her

Function Report, Plaintiff reported that she used the computer daily. (R. at 264.) During the

administrative hearing, however, Plaintiff testified that her left hand neuropathy made typing

difficult. (R. at 65.) Plaintiff later reported that she had completed medical billing and coding

training during the relevant period, but that she had not pursued a career due to difficulty typing.

(R. at 78-79.) Plaintiff also told the ALJ that her pain medications made her drowsy, limiting her

ability to work. (R. at 65.) However, as discussed below, Plaintiff's activities of daily living

belie her testimony that medication-induced drowsiness hindered her ability to work.

The Court accepts the ALJ's assessment of Plaintiff's treatment compliance with relation

to credibility. Plaintiff's daily activities contradict her testimony regarding her medication-

induced drowsiness. Furthermore, Plaintiff's testimony and Function Report are contradictory as

to Plaintiff's ability to type and use a computer. Therefore, substantial evidence supports the

ALJ's evaluation of Plaintiff's statements.

5. Plaintiff's Activities of Daily Living

Plaintiff asserts that the ALJ improperly cited Plaintiff's reported activities to discredit

Plaintiff's statements regarding her pain and functional limitations. (Pl.'s Mem. at 24-25.)

Defendant argues that Plaintiff's activities of daily living support the ALJ's credibility

determination. (Def.'s Mem. at 26-27.)

Substantial evidence supports the ALJ's credibility determination based on Plaintiff's

reported activities. On her Function Report, Plaintiff stated that she prepared meals two to three

times a week, cooking enough to last at least two days. (R. at 262.) She could do laundry, iron,

sweep, mop, vacuum and dust throughout the week. (R. at 262.) She could drive, but did not

own a car. (R. at 263.) She played cards and worked on jigsaw puzzles weekly, social

27

networked three times a week and used the phone and computer daily. (R. at 264.) During the hearing, Plaintiff explained that she cooked simple meals like boxed macaroni and cheese, and that she washed dishes but not pots and pans. (R. at 86.) She denied vacuuming, as her residence had no carpets. (R. at 86.) She confirmed that she mopped small spaces and swept the floor. (R. at 86.) She reported that she did not play cards as much as she used to. (R. at 88.)

The record, therefore, shows generally that Plaintiff could engage in a variety of activities in her home, including activities that required fine manipulation of her hands, such as typing on the computer and working on jigsaw puzzles. Moreover, Plaintiff's reported activities, including driving, undermine her claim that her drowsiness limited her ability to work. These activities of daily living support the ALJ's credibility determination.

In short, the ALJ properly considered Plaintiff's non-compliance with treatment recommendations, the conservative nature of Plaintiff's treatment, objective findings in the medical record, Plaintiff's own testimony and Plaintiff's reported activities of daily living. Together, these analyses show that substantial evidence supports the ALJ's finding that Plaintiff's testimony regarding the intensity, persistence and limiting effects of her impairments was not credible.

C. Substantial Evidence Supports the ALJ's Determination of Plaintiff's RFC.

Plaintiff alleges that the ALJ made two errors in determining Plaintiff's RFC: discrediting Plaintiff's assertions regarding her pain and functional limitations and failing to perform a function-by-function analysis. (Pl.'s Mem. at 26-28.) Defendant responds that the ALJ properly assessed Plaintiff's RFC. (Def.'s Mem. at 28.) The Court finds that the ALJ did not err in determining Plaintiff's RFC.

1.  The ALJ's Properly Considered Plaintiff's Assertions.

Plaintiff argues that the ALJ erred in evaluating Plaintiff's RFC by failing to credit any of

Plaintiff's allegations regarding her functional limitations. (Pl.'s Mem. at 26-27.)  Per Plaintiff,

by finding her "not entirely credible" and stating that her credibility was "undermined," the ALJ

credited some, but not all, of Plaintiff's allegations of pain. (Pl.'s Mem. at 26.)  In turn, Plaintiff

asserts, the ALJ should have acknowledged Plaintiff's credible statements in assessing the RFC.

(Pl.'s Mem. at 27.)  Defendant responds that substantial evidence supports the ALJ's

determination of Plaintiff's RFC.  (Def.'s Mem. at 28.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant

can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20

C.F.R. §§ 416.902(e)-(f), 416.945(a)(1).  In analyzing a claimant's abilities, the ALJ must first

assess the nature and extent of the claimant's physical limitations and then determine the

claimant's RFC for work activity on a regular and continuing basis.  20 C.F.R. § 416.945(b).

Generally, the claimant bears the responsibility for providing the evidence that the ALJ utilizes

in making her RFC determination; however, before determining that a claimant is not disabled,

the ALJ must develop the claimant's complete medical history, including scheduling consultative

examinations if necessary.  20 C.F.R. § 416.945(a)(3).  The RFC must incorporate impairments

supported by the objective medical evidence in the record, as well as those impairments that are

based on the claimant's credible complaints.  *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D.

Va. June 23, 2011); *accord* 20 C.F.R. § 416.945(e).

Plaintiff's argument rests on the language used by the ALJ.  In essence, Plaintiff argues

that, because the ALJ did not expressly discredit *all* of Plaintiff's statements, he should have

identified the statements he found credible and explicitly factored them into the RFC assessment.

The Court rejects Plaintiff's interpretation of the ALJ's duties. "[T]here is no particular language or format that an ALJ must use in his or her analysis as long as there is sufficient development of the record and explanation of findings to permit meaningful review." *Clark v. Comm. Social Sec.*, 2010 WL 2730622, at * 17 (E.D. Va. Jun. 3, 2010) (internal citation omitted).

As discussed above, the ALJ properly evaluated Plaintiff's credibility. Therefore, the Court finds that the ALJ did not err by not considering Plaintiff's subjective assertions in formulating Plaintiff's RFC.

2. The ALJ Properly Performed a Function-by-Function Analysis and Substantial Evidence Supports the ALJ's Determination of Plaintiff's RFC

Plaintiff contends that the ALJ's failure to perform a function-by-function analysis constitutes reversible error, taking issue with the ALJ's finding regarding Plaintiff's left hand. (Pl.'s Mem. at 26-28.) Defendant counters that substantial evidence supports the ALJ's conclusions regarding Plaintiff's RFC. (Def.'s Mem. at 28.)

Social Security Ruling 96-8p instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing SSR 96-8p). The Ruling further explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* (citing SSR 96-8p).

An ALJ's failure to conduct a function-by-function analysis does not necessarily result in automatic remand. The Fourth Circuit rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Indeed, in

30

light of *Mascio,* at least three district courts have found that in the absence of an explicit

function-by-function analysis, the reviewing court must assess whether the ALJ's RFC analysis

considered the relevant function, whether his decision provides a sufficient basis to review his

conclusions and, ultimately, whether that decision is supported by substantial evidence in the

record." *Ashby v. Colvin,* 2015 WL 1481625, *3 (S.D.W.Va. March 31, 2015) (holding that ALJ

did not conduct explicit function-by-function analysis of claimant's physical abilities, but

sufficient evidence existed showing that ALJ analyzed the relevant function); *see also Scruggs v.

Colvin,* 2015 WL 2250890, at *4 (W.D.N.C. May 13, 2015) (requiring remand, because ALJ's

decision did not address claimant's ability to complete tasks for a full workday); *Carver v.

Colvin,* 2015 WL 4077466, at *10 (M.D.N.C. July 6, 2015) (recommending remand, because

ALJ neglected to assess claimant's ability to walk or stand for a full workday).

     In this case, the ALJ found that Plaintiff had the RFC to perform light work as defined in

20 CFR §§ 404.1567(b) and 416.967(b), with exceptions — specifically, that Plaintiff was

limited to "frequent" use of her left hand. (R. at 38.) He found that Plaintiff could no more than

occasionally climb or stoop, and no more than frequently balance, kneel, crouch or crawl. (R. at

38.) He stated that Plaintiff could not climb ladders, ropes or scaffolds, and could not tolerate

concentrated exposure to odors, dust, fumes, gasses or poor ventilation. (R. at 38.) He also

stated that Plaintiff could no more than frequently use her left hand for fingering and feeling. (R.

at 38.)

     Here, the ALJ included a comprehensive review of the evidence supporting his RFC

assessment. (R. at 40.) Contrary to Plaintiff's argument, the ALJ actually considered Plaintiff's

severe impairments and explained how the evidence supports the RFC. (R. at 40.) As discussed

at length above, the ALJ considered Plaintiff's treatment with her various doctors. (R. at 39-40.)

The ALJ also considered Plaintiff's abilities to perform certain functions, such as typing, despite her allegations to the contrary. (R. at 41.) Moreover, the ALJ actually crafted an RFC for Plaintiff that specifically incorporated her orthopedic limitations with her left hand. (R. at 38.) Finally, in arguing that the ALJ improperly evaluated Plaintiff's RFC, Plaintiff fails to direct the Court to evidence of record that would contravene the ALJ's RFC finding. (Pl.'s Mem. at 26-28.) Based on the foregoing, the Court finds that substantial evidence supports the ALJ's determination regarding Plaintiff's RFC.

## V.  CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 7) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 9) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge M. Hannah Lauck and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date:  July 11, 2016

32