IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ARLONDA S. KEATON,

        Plaintiff,

v.                                                      Civil Action No. 3:15cv588

CAROLYN W. COLVIN,
*Acting Commissioner of*
*Social Security Administration*

        Defendant.

## MEMORANDUM OPINION

Plaintiff Arlonda Keaton challenges the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter comes before the Court on the Report and Recommendation ("R&R") prepared by the Honorable David J. Novak, United States Magistrate Judge, (ECF No. 11), addressing the parties' cross-motions for summary judgment, (Pl.'s Mot. Summ. J., ECF No. 7; Def.'s Mot. Summ. J., ECF No. 9). The Magistrate Judge recommends that this Court deny Keaton's Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, and uphold the final decision of the Commissioner. (R&R at 32.) Keaton objects to the R&R. (Pl.'s Objs. R&R, ECF No. 12.) The Court exercises jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).[1] The Court dispenses with oral argument, as it would not materially aid the decisional process.

---

[1] Section 405(g) provides in relevant part, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he [or she] was a party . . . may obtain a review of such decision by a civil action . . . in [a] district court." Section 1383(c)(3) confirms that "a final determination of the Commissioner" after a hearing "shall be subject to judicial review as provided in section 405(g)."

For the reasons articulated below, the Court will overrule Keaton's objections and adopt the R&R. Accordingly, the Court will deny Keaton's Motion for Summary Judgment, (ECF No. 7), grant the Commissioner's Motion for Summary Judgment, (ECF No. 9), and affirm the decision of the Commissioner.

## I. Factual and Procedural Background

### A. Keaton's Background and Medical History

Keaton is a sixty-two year old high school graduate who has completed three years of college. (R. at 231.) She worked at several jobs from 1996 to 2008.[2] (R. at 230–31.) Keaton applied for DIB in 2012, and for SSI in 2013. (R. at 34.) She claims disability based on hypertension, chronic obstructive pulmonary disease, left thoracic outlet syndrome, degenerative joint disease of the cervical spine with left ulnar neuropathy/cubital tunnel syndrome, osteoarthritis of the lumbar spine, mild cardiomyopathy, and minimal coronary artery disease. (R. at 36.) In addition, Keaton takes the medication Sertraline to control her "not severe" conditions of sleep apnea and depression/anxiety. (R. at 37.)

Keaton has several impairments that affect her daily life, including aortic valve diseases, spine disorders, essential hypertension, and congenital heart disease. (R. at 101–02.) Although Keaton has exertion limitations, she is able to sit for about six hours in an eight-hour workday with normal breaks, and stand or walk for about six hours in an eight-hour workday. (R. at 103.) Keaton cannot tolerate concentrated exposure to fumes, odors, dusts, or gases, she cannot tolerate poor ventilation, and she must avoid concentrated exposure to hazardous machinery and heights. (R. at 104.)

---

[2] Keaton previously worked as a secretary, a program support specialist, a mail carrier, and a medical billing clerk. (R. at 59–65.)

2

## B. **Procedural History**

Keaton applied for DIB and SSI under the Social Security Act (the "Act") on May 29, 2012, and April 23, 2013, respectively. (R. at 34.) At the time she filed those applications, Keaton alleged an onset date of disability ("AOD") of April 15, 2003. The Social Security Administration ("SSA") denied her claims, and denied her later request for reconsideration. (R. at 34.) Keaton then requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 142.) In April of 2014, Keaton amended her AOD from April 15, 2003, to January 10, 2012. (R. at 34.) On April 21, 2014, an ALJ conducted a hearing and found against Keaton. (R. at 34.) On August 7, 2015, the Appeals Council denied Keaton's request for review, rendering the ALJ's decision the final determination of the Commissioner. (R. at 1.)

Keaton then sought judicial review of the ALJ's decision and this Court referred the matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B).[3] Keaton filed a Motion for Summary Judgment, (ECF No. 7), arguing that the ALJ erred in evaluating the medical evidence and opinions, erroneously discounted Keaton's credibility, and failed to properly assess Keaton's residual functional capacity ("RFC"). (Pl.'s Mem. Supp. Mot. Summ. J. 4–29, ECF No. 8; R&R 1, ECF. No. 11.) The Commissioner filed a Motion for Summary Judgment at a later date. (ECF No. 9.) The Magistrate Judge considered the parties' cross-motions for summary judgement and issued an R&R. (R&R, ECF No. 11.) Keaton timely filed her objections to the R&R in this Court, (ECF No. 12), and the Commissioner properly responded to the objections, (ECF No. 13). The Court addresses Keaton's objections below.

---

[3] 28 U.S.C. § 636(b)(1)(B) permits a District Court Judge to refer any motion "excepted in subparagraph (A)" to a magistrate judge for the limited purpose of conducting a hearing and submitting a recommended ruling. 28 U.S.C. § 636(b)(1)(B).

3

## II. Standard of Review

### A. Appellate Standard of Review

This Court reviews *de novo* any part of the Magistrate Judge's R&R to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C);[4] Fed. R. Civ. P. 72(b)(3).[5] In doing so, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In reviewing the ALJ's decision regarding disability benefits, this Court "'must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.'" *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence supports a finding if the finding is based on "'relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion.'" *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence requires "more than a mere scintilla, but less than a preponderance of the evidence." *Id.* If the ALJ's decision is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have

---

[4] The statute provides in part: "The magistrate judge shall file his [or her] proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties." 28 U.S.C. § 636(b)(1)(C).

[5] The statute provides that, in resolving objections, "[t]he district court must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

4

supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "'In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].'" *Mastro*, 270 F.3d at 176 (first and second alterations in original) (quoting *Craig v. Chater*, 76 F.3d 585, 598 (4th Cir. 1996)).

### B. <u>The ALJ's Five-Step Evaluation</u>

Because this case involves a decision determining eligibility for benefits, the Court reviews "whether the ALJ's finding . . . was reached based upon the correct application of the relevant law." *Craig*, 76 F.3d at 589 (citing *Coffman*, 829 F.2d at 517). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *see* 20 C.F.R. §§ 416.920, 404.1520.

In step one, the "ALJ asks . . . whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; [and,] at step three, whether the medical impairments meet or equal an impairment listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Before proceeding to the fourth step, the ALJ must determine the claimant's RFC, taking into account all of the claimant's impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is an assessment of his or her capacity to perform sustained physical and mental activities on a regular and continuous basis, in spite of his or her limitations. *See* SSR 96-8p (policy interpretation for assessing RFC). After determining a claimant's RFC, the ALJ proceeds to step four and considers whether the claimant could continue performing the work that he or she did in the past. If the claimant cannot continue to perform his or her prior work, the ALJ proceeds to step five and determines whether the claimant could perform any other job available in the

national economy. 20 C.F.R. §§ 416.905, 416.920; *see also Rogers v. Barnhart*, 216 F. App'x 345, 347–48 (4th Cir. 2007).

If, at any step of the analysis, the ALJ determines that the claimant is not disabled, the inquiry must stop and the ALJ must deny the claim. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472–73.

### III. Analysis

Keaton raises four objections to the R&R, some of which she improperly seeks to incorporate from her motion for summary judgment before the Magistrate Judge.[6] (Pl.'s Objs. R&R 1–2, ECF No. 12.) First, Keaton argues that the R&R erroneously finds that the ALJ's failure to assign weight to certain medical evidence constitutes harmless error. Second, Keaton contends that the R&R errs in finding that substantial evidence supports the ALJ's evaluation of the medical record and assignment of weight to the opinion evidence. Third, Keaton posits that the R&R's determination that substantial evidence supports the ALJ's evaluation of Keaton's credibility constitutes error. Fourth, Keaton avers that the R&R erroneously finds that substantial evidence supports the ALJ's determination of Keaton's RFC. The Court addresses each challenge raised by Keaton below.

---

[6] In several places in her Objections, Keaton submits generalized statements indicating that she "incorporates" and "relies" on arguments from her Summary Judgment memorandum, rather than presenting those arguments in specific objections. Such statements do not constitute cognizable objections addressable by the Court and are improper. *See United States v. George*, 971 F.2d 1113, 1117 (4th Cir. 1992) (explaining that upon submission of a Magistrate Judge's Report and Recommendation, "the court . . . 'shall make a de novo determination of *those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*" (emphasis added) (quoting 28 U.S.C. § 636(b)(1)); *see also Sharp v. Colvin*, Civ. No. 3:14CV340-HEH, 2015 WL 1517416, at *3 (explaining that plaintiff only raised two objections, therefore the court "will . . . cabin its analysis to these issues" (citing *George*, 971 F.2d at 1117)), *aff'd*, 660 F. App'x 251 (4th Cir. 2016). The Court finds that Keaton's summary judgment arguments not specified and included in her objections were thoroughly addressed in the R&R.

### A. The ALJ's Failure to Assign Weight to the Medical Opinions of Dr. Thompson and Dr. Malasitt Constitutes Harmless Error

#### 1. The ALJ Erred by Failing to Assign Weight to Drs. Thompson and Malasitt

An ALJ must assign weight to every medical opinion and provide reasons for the weight given. *Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 100 (4th Cir. 2011); *Gordon v. Schweiker*, 725 F.2d 231, 235–36 (4th Cir. 1984); *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979); 20 C.F.R. 404.1527(c). Assigning weight to such evidence shows that the ALJ has considered the evidence. *See Gordon*, 725 F.2d at 235-36 (citing *Arnold v. Sec'y of Health, Educ. and Welfare*, 567 F.2d 258, 259 (4th Cir. 1977) ("'The courts . . . face a difficult task in applying the substantial evidence test when the [ALJ] has not considered all relevant evidence'")). Unless an ALJ assigns weight to all relevant medical opinions in the record, a reviewing court "'cannot determine if the findings are unsupported by substantial evidence.'" *Tanner*, 602 F. App'x at 100 (quoting *Gordon*, 725 F.2d at 235).

Because the record contains the medical opinions of Drs. Thompson and Malasitt, (R. at 936–42, 961–1000), the ALJ had a duty to assign weight to them. This Court finds that the ALJ's failure to explicitly afford weight to the opinions of Dr. Thompson and Dr. Malasitt constitutes error. (R&R at 10-11.) This does not end the Court's analysis.

#### 2. The ALJ's Error in Failing to Assign Weight to Drs. Thompson and Malasitt's Opinions Constitutes Harmless Error

##### a. The Harmless Error Doctrine

In order to merit remand or reversal, an ALJ's error must cause harm, *Shinseki v. Sanders*, 556 U.S. 396, 411 (2009),[7] and not just a possibility of prejudice, *McLeod v. Astrue*,

---

[7] The United States Court of Appeals for the Fourth Circuit first recognized harmless error in the context of social security disability determinations by published opinion in *Mascio*, 780 F.3d at 639 (4th Cir.2015), however, it applied the doctrine in several unpublished cases prior to *Mascio*. *See, e.g., Tanner*, 602 F. App'x at 101; *Garner*, 436 F. App'x at 225; *see also*

7

640 F.3d 881, 888 (9th Cir. 2010). "[R]eversal is not required when the alleged error 'clearly has no bearing on the procedures used or the substance of the decision reached.'" *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (alteration in original) (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248 (1964)). The party alleging harmfulness of an error "carries the burden of showing that prejudice resulted." *Shinseki*, 556 U.S. at 409; *see also McLeod*, 640 F.3d at 887–88 (applying harmless error standard and burden adopted in *Shinseki*, explaining that "mere probability [of harm] is not enough").

A reviewing court must give "[a]n estimation of the likelihood that the result would have been different." *Shinseki*, 556 U.S. at 411. It is impractical and unnecessary to reverse absent a finding of a "substantial likelihood" of harm. *Tanner*, 602 F. App'x at 101 (holding that failure to assign weight to medical source statement did not constitute reversible error requiring remand where the ALJ considered the medical source statement and the ALJ's finding of non–disability would not differ on remand; also noting that remand would needlessly expend administrative resources).

### b. Keaton Fails to Carry Her Burden to Show That the Error was Harmful

Upon review, the Court finds that the record and circumstances demonstrate no harm, nor has Keaton met her burden to establish a "substantial likelihood" of harm. *McLeod*, 640 F.3d at 887–88. When a record shows that the ALJ has considered all relevant medical opinions that are consistent with the record and evidence, the failure to assign weight to a medical opinion can constitute harmless error. *See Tanner*, 602 F. App'x at 100–01 (finding failure to assign weight to medical source not harmful where RFC assessment clearly considered report which was consistent with other evidence). *But see Arnold*, 567 F.2d at 259 (finding that the ALJ

---

*Batchelor v. Colvin*, 962 F. Supp. 2d 864, 867–68 (E.D.N.C. 2013) (applying the Fourth Circuit's holding in *Garner* to conclude the ALJ's error was harmless).

8

committed harmful error by incorrectly categorizing medical records as irrelevant and failing to consider them, explaining that the ALJ must consider all relevant evidence). Despite the ALJ's failure to assign weight to the opinions of Drs. Thompson and Malasitt, the record plainly shows that the ALJ reviewed and considered them. (R. at 40; R&R at 12.) As explained more fully below, the ALJ integrated these doctors' orthopedic limitations for Keaton in his RFC determination,[8] (R. at 40; R&R at 13), and accounted for and relied upon their orthopedic evidence and opinions in making a finding of non-disability.[9] (R. at 40; R&R at 13.)

Nothing in the record suggests that the ALJ marginalized or rejected the opinions of Drs. Thompson and Malasitt. Rather, the ALJ accounted for the findings and opinions from Drs. Thompson and Malasitt regarding Keaton's upper extremity impairments in her left hand.[10] The ALJ cited and relied on Dr. Thompson's and Dr. Malasitt's records to reach conclusions in his decision. For example, the ALJ noted that: (1) Keaton's condition is not expected to improve, (R. at 40, 941, 967); (2) there is numbness of the left hand, (R. at 40, 941); (3) there is cervical/thoracic tenderness, (R. at 40, 967); and, (4) Keaton's cervical/thoracic range of motion is limited, (R. 40, 967). The numerous references by the ALJ to Dr. Thompson's and Dr. Malasitt's portions of the record demonstrate that the ALJ considered and relied upon their opinions. (R&R at 10–13.)

---

[8] The ALJ frequently cites to exhibits 25F and 27F as a basis for the RFC. These exhibits include the records of Drs. Thompson and Malasitt, respectively. (R. at 936–42, 961–1000.)

[9] In the RFC, the ALJ does not identify these medical professionals—or any other medical professional—by name. Instead, the ALJ cites reports and opinions in the record without specifically naming a doctor.

[10] The ALJ directly discussed the orthopedic conditions of Keaton's left hand as evidenced by the numerous references to the record of these orthopedic physicians. (R. at 936–42; R&R at 9–10.) Upon review of the medical records, the Court cannot find that the ALJ mischaracterized the evidence or opinion of Dr. Frankenhoff or Dr. Thompson.

9

Keaton argues that the ALJ's failure to assign weight to the opinions of Dr. Thompson and Dr. Malasitt requires this Court to speculate as to whether substantial evidence supports the ALJ's findings. (Pl.'s Objs. R&R 3.) The Court disagrees. An ALJ error does not trigger automatic reversal nor does it demonstrate, in and of itself, *how* the error caused harm or changed the result. *Tanner*, 602 F. App'x at 100–01 (finding remand would likely not alter the prior finding of non-disability, despite the ALJ's failure to assign weight, because the ALJ considered the opinion); *see also McLeod*, 640 F.3d at 888 (placing the burden on the challenging party to establish that the error caused harm). The ALJ's decision makes it clear that he reviewed and considered the orthopedic evidence of record and accounted for Dr. Malasitt's and Dr. Thompson's medical opinions. (R&R at 13.) Notwithstanding the ALJ's failure to afford them weight, the ALJ's consideration of these opinions makes it clear that doing so would not have altered the ALJ's ultimate finding of non-disability. Where harmlessness is clear, remand is not appropriate. *McLeod*, 640 F.3d at 888. Because Keaton is unable to demonstrate harm or a substantial likelihood that remand would change the outcome, *McLeod*, 640 F.3d at 888, this Court will overrule this objection.

### B. The ALJ Properly Assigned Weight to the Opinions of Drs. Campbell and Bryan

Keaton argues that the R&R errs in finding that the ALJ "assigned appropriate weight" to the opinions of Dr. Campbell and Dr. Bryan. (Pl.'s Objs. R&R at 3.) A reviewing court should not disturb the ALJ's decision "absent some indication that the ALJ had 'dredged up specious inconsistencies,' or failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn*, 607 F. App'x. at 267 (quoting *Scivally v. Sullivan*, 966 F. 2d 1070, 1077 (7th Cir. 1992)). The Court finds no "specious inconsistencies" or failure by the ALJ regarding the weight afforded to Dr. Campbell and Dr. Bryan. (R&R at 15–17.)

Under the "treating physician rule," a treating physician's opinion "on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Mastro*, 270 F.3d at 178 (citing 20 C.F.R. § 416.927(d)(2)). However, "'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.'" *Id.* (quoting *Craig*, 76 F.3d at 590). It is not enough that some evidence exists to support the treating physician's opinion; if that opinion is inconsistent with other substantial evidence, the ALJ may give it less weight, as was the case here. *Id.*

Dr. Campbell's April 2004 report restricted Keaton to lifting no more than ten pounds, noted that she could not withstand "prolong[ed]" sitting, standing, or swimming, and limited her to "no excessive use of arm and wrist." (R. at 288; R&R at 14.) Dr. Campbell indicated that Keaton could not use her hands for simple grip or power grip and had limited fine manipulation. (R. at 289; R&R at 14.) In addition to being prepared almost eight years before Keaton's AOD, Dr. Campbell's report contains vague terminology inconsistent with the objective findings of Dr. Srivastava made earlier that same year. (R&R at 15.) Dr. Srivastava examined Keaton and found she had "flexion and extension [that was] painless and full-range," and she presented "5/5 motor power in shoulder, elbow, and hand muscles." (R. at 306.) Although Dr. Srivastava made her findings eight months prior to Dr. Campbell's report, no symptoms or intervening factors exist in the record that would give rise to this significant physical decline in such a brief period of time. Because Dr. Campbell's opinion was inconsistent with other substantial evidence, the ALJ did not err in according it less weight. *Mastro*, 270 F.3d at 178; *see* R&R at 15–16.

Regarding the ALJ's findings for Dr. Bryan, the ALJ discounted only Dr. Bryan's November 21, 2012 note.[11] (R. at 42; R&R at 16–17.) In the note, Dr. Bryan opined that Keaton should "remain out of work until . . . completion of physical therapy." (R. at 622.) Statements specifying the ability of a person to work are legal conclusions reserved for the Commissioner and are outside the scope of the medical conclusions by medical experts or treating physicians. *Morgan*, 142 F. App'x at 722 (citing 20 C.F.R. § 404.1527(d)(1) for the proposition that statements by the treating physician that a claimant is "disabled" or "unable to work," are legal conclusions reserved for the Commissioner). (R&R at 17.) Therefore, the ALJ did not err in assigning less weight to Dr. Bryan's November 21, 2012 note.

The ALJ found that the opinions of Drs. Campbell and Bryan were not wholly consistent with the substantial evidence upon which he relied. The R&R meticulously examines the record and properly concludes that substantial evidence supports the ALJ's assignment of weight to Drs. Bryan and Campbell. (R&R at 15–16.) The district court does not have discretion to disturb the weight the ALJ afforded to Drs. Campbell and Bryan because the ALJ provided sufficient reasons to support his conclusions. *Mastro*, 270 F.3d at 176. Accordingly, the Court finds that the ALJ gave the appropriate weight to the medical opinion of Dr. Campbell and to Dr. Bryan's November 21, 2012 note.

C. **Substantial Evidence Supports the ALJ's Evaluation of Keaton's Credibility**

Keaton contends that substantial evidence does not support the ALJ's finding regarding her credibility. (Pl.'s Objs. R&R at 2.) When an individual's complaints regarding the limiting effects of his or her disability do not correlate with objective medical evidence, the ALJ must

---

[11] VCU Health Systems authorized release of Dr. Bryan's November 21, 2012 report on January 17, 2013. (R. at 622.) Although the ALJ mistakenly identified the document as Dr. Bryan's "January 17, 2013 statement," he properly identified this as exhibit 19F. (R. at 42.) The Magistrate Judge correctly listed the date in his R&R as "Dr. Bryan's November 21 note." (R&R at 17.)

make an assessment of the individual's credibility based on the entire case record. SSR 96-7p.[12] Credibility is an important factor in determining the claimant's RFC. To determine a claimant's RFC, the ALJ must follow a two-step process. *Craig*, F.3d at 549; 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 96-7p. First, the ALJ must determine whether medically-determinable mental or physical impairments could reasonably be expected to produce the alleged symptoms. *Craig*, 76 F.3d at 549; 20 C.F.R. §§ 416.929(b)–(c); SSR 96-7p. If this showing is made, the ALJ, at step 2, evaluates the claimant's statements regarding the intensity, persistence, and limiting effects of his or her symptoms to determine the extent to which the symptoms limit his or her ability to do basic work activities. *Craig*, 76 F.3d at 595; 20 C.F.R. § 416.929(c)(1); SSR 96-7p. Under the regulations, this evaluation must take into account not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, symptoms, laboratory findings, objective medical evidence of pain, and any other evidence relevant to the severity of the impairment, including evidence of the claimant's daily activities, specific descriptions of pain, and any medical treatment utilized to alleviate the pain. *Craig*, 76 F.3d at 595; 20 C.F.R. §§ 416.929(c)(1)–(3), 404.1529(c)(1)–(3).

The Fourth Circuit and courts within this district repeatedly have held that an ALJ's credibility determinations should be given "great weight" because the ALJ "had the opportunity to observe the demeanor and determine the credibility of the claimant." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)); *see also Gullace v. Astrue*, No. 1:11cv0755, 2012 WL 691554, at *23 (E.D. Va. Feb. 13, 2012); *Parker v. Astrue*, No. 3:10cv558, 2011 WL 3585373, at *5 (E.D. Va. July 28, 2011). Absent "exceptional circumstances," the reviewing court must accept the ALJ's credibility

---

[12] Effective as of March 28, 2016, SSR 16-3p superseded SSR 96-7p. SSR 16-3p effectively removes the use of the term "credibility" but does not alter the substantive analysis. Because the ALJ was held to the standard and language of SSR 96-7p, the Court refers to the prior SSR and utilizes the credibility language applicable at the time to this case.

determination. Exceptional circumstances exist when "a determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) (citations and internal quotation marks omitted).

Upon review of the record, the Court will accept the ALJ's credibility findings because no exceptional circumstances exist indicating that the ALJ's credibility determination is inconsistent with other findings of fact or that it rests on an inadequate reason. The ALJ thoroughly examined three areas to reach his credibility determination: (1) Keaton's inconsistent statements; (2) Keaton's non-compliance with medication protocols; and, (3) Keaton's conservative treatment regimen. (R&R at 17–28.) The Court discusses each in turn.

### 1. **Keaton's Inconsistent Statements**

In assessing subjective complaints of pain, the ALJ must determine whether an underlying medically-determinable physical or mental impairment exists that could reasonably produce the individual's pain or related symptoms. *Craig*, 76 F.3d. at 594–95. Next, the ALJ must evaluate the credibility of the claimant's statements of intensity and persistence of pain. *Id.* at 591, 595. Here, the ALJ found that Keaton's medical impairments could reasonably cause pain, but determined that her statements of intensity and persistence lacked credibility. (R. at 38–42; R&R at 27–28.) The ALJ appropriately relied on Keaton's Function Report to make some of his credibility findings.

The Function Report indicated that Keaton prepared meals two to three times a week, played cards and worked on puzzles weekly, and used the phone and computer daily. (R. at 262–64; R&R at 27.) It also indicated that she did laundry, ironed, mopped, swept, and dusted on a weekly basis. (R. at 262; R&R at 27.) The ALJ found that Keaton's ability to

engage in such a wide variety of activities, including activities requiring fine manipulation, was inconsistent with the intensity and persistence of pain and other symptoms she claimed. (R. at 38–42; R&R at 28.) This Court will not disturb the reasonable finding of the ALJ regarding Keaton's inconsistent statements.

### 2. Keaton's Non-compliance with Medical Treatment

A claimant's non-compliance with medical treatment can undermine the claimant's credibility regarding the severity of his or her symptoms. *Dunn*, 607 F. App'x. at 267; *see also* SSR 96-7p. Keaton demonstrated frequent non-compliance with medications. (R&R at 20–24.) The ALJ determined that Keaton's claims of severity and persistence lacked credibility in part because she did not take her medications as prescribed, instead taking them on an as-needed basis, or not at all. (R. at 41, 881). In one report, a physician questioned whether Keaton was complying with her blood pressure regimen, noting Keaton's high and seemingly uncontrolled blood pressure. (R. at 882.) Keaton consistently failed to comply with Dr. Bryan's medical recommendation that she cease smoking. (R. at 414, 864; R&R at 22.) Despite conclusions by Keaton's orthopedists that "physical therapy is going to help her a lot," (R. at 941), and is "probably the most important thing for her," (R. at 967), Keaton did not appear for regularly-scheduled physical therapy sessions and was discharged for non-attendance after only three sessions. (R. at 556; R&R at 22). The Court finds the ALJ's credibility finding of Keaton's non-compliance with medical treatment reasonable. (R&R at 20–24.)

### 3. Keaton's Conservative Treatment

Keaton alleges that the ALJ improperly considered the nature of her treatment in his credibility finding and that his finding lacks the support of substantial evidence. An ALJ may consider the nature of treatment when determining credibility, as conservative treatment may be an indicator that the claimant is magnifying the reported intensity or persistence of pain or other

15

symptoms. *Dunn*, 607 F. App'x. at 273; 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v). When an ALJ finds that a claimant's "treatment was not as aggressive as one would reasonably think would be employed if the alleged disability were actually that severe," the ALJ may conclude such conservative treatment "bears on the claimant's credibility." *Dunn*, 607 F. App'x. at 274–75.

Even recognizing Keaton's cubital tunnel surgery and her cardiac catheterization, the ALJ characterized Keaton's medical treatment as "conservative" because Keaton's treatment consisted largely of medication and physical therapy. (R. at 40; R&R at 25.) Despite substantial radiological and MRI testing for her back and neck over the years, Keaton's physicians did not recommend any invasive treatment, indicating that Keaton's conditions were not so severe as to warrant extreme corrective measures. (R. at 502, 683–97, 786, 934–36, 940–41, 967; R&R at 25.) Although Keaton pursued a more invasive treatment regimen for her left hand, the ALJ clearly considered her surgery alongside the many areas and types of treatment she underwent as a whole. Additionally, Keaton's non-compliance with medication and physical therapy clearly demonstrates that she did not experience such intense pain that she aggressively sought and followed through with all treatments available to her. Reviewing the record, substantial evidence supports the ALJ's characterization of Keaton's treatment as "conservative." (R&R at 25.)

### D. **Substantial Evidence Supports the ALJ's Determination of Keaton's RFC**

Keaton's entire argument encompassing her objection that "substantial evidence does not support the ALJ finding regarding Plaintiff's RFC" consists of the following:

> As to the argument that substantial evidence does not support the ALJ finding regarding Plaintiff's RFC and any other remaining issues pursuant to Plaintiff's objections noted herein, Plaintiff has previously provided argument in her Memorandum. Plaintiff relies upon that argument.

(Pl.'s Objs. R&R, ECF 12 at 7.)

As explained in note 6, *supra*, "the court . . . 'shall make a de novo determination of *those portions of the report* or specified proposed findings or recommendations *to which*

16

*objection is made*" 28 U.S.C. § 636(b)(1) (emphasis added). Here, Keaton limited her RFC objections to findings relating to credibility and the nature of treatment. The Court addressed those objections in part III., C., *supra*. Absent any specific argument regarding the RFC determination, the Court has no additional RFC analysis to review de novo.[13]

## IV. Conclusion

Substantial evidence supports the ALJ's factual findings, which were fully supported by the record and were not affected by the ALJ's harmless error. This Court has thoroughly examined the record and overrules Keaton's objections and adopts the Report and Recommendation of the Magistrate Judge in its entirety. Accordingly, Plaintiff's Motion for Summary Judgment will be denied, Defendant's Motion for Summary Judgment will be granted, and the final decision of the Commissioner will be affirmed.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
M. Hannah Lauck
United States District Judge

Date: 3-3-17
Richmond, Virginia

---

[13] In the R&R, the Magistrate Judge thoroughly and adequately analyzed the argument in Keaton's summary judgment motion and memo challenging the ALJ's RFC determination. (R&R at 28–32.)

17